UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEARSPAN FABRIC STRUCTURES INTERNATIONAL, INC.,<br>    *Plaintiff*,<br>v.<br>WILDWOOD DEVELOPMENT CORPORATION D/B/A WILDWOOD RELOAD, PHOENIX PLAZA CORP., and MASSACHUSETTS CENTRAL RAILROAD CORP.,<br>    *Defendants*. | No. 3:20-cv-00175 |

**RULING ON MOTION TO DISMISS**

Plaintiff Clearspan Fabric Structures International, Inc. ("Clearspan") brings this action against Wildwood Development Corporation d/b/a Wildwood Reload ("Wildwood"), and its guarantors Phoenix Plaza Corporation ("Phoenix"), and Massachusetts Central Railroad Corporation ("Mass Central," together with Phoenix, the "Guarantors"), alleging that Wildwood (and through Wildwood, the Guarantors) owes Clearspan unpaid installment payments pursuant to separate lease, contract, and guaranty agreements. Compl., ECF No. 44. Defendants filed a partial motion to dismiss, seeking to dismiss parts of Count I (breach of contract as to Wildwood) and the entirety of Count II (breach of guaranty as to Phoenix and Mass Central). For the reasons set forth herein, the defendants' motion to dismiss is DENIED.

**I.     BACKGROUND**

The following facts are drawn from Clearspan's operative complaint and the exhibits attached to that complaint and are accepted as true for the purpose of this motion.

Clearspan is a Connecticut corporation with an office and place of business in South Windsor, Connecticut. ECF No. 44 ¶ 1. Phoenix, Mass Central, and Wildwood are

Massachusetts corporations with a place of business in South Barre, Massachusetts. *Id.* ¶¶ 2, 23, 24. Clearspan provided Wildwood materials and services to construct a "Structure" under a written contract dated July 9, 2010 (the "Contract") and an Equipment Lease Agreement dated May 21, 2010 (the "Lease"). *Id.* ¶ 3; ECF No. 44, Ex. B, at 50. Wildwood's obligations under the Lease were guaranteed by Phoenix and Mass Central in the Lease Guaranty signed June 8, 2010 (the "Guaranty"). *Id.* ¶¶ 26, 29.

Under the terms of the Contract and Lease, Wildwood was required to pay Clearspan "a total principal amount of not less than $344,125.02 in monthly installments until all sums are paid." *Id.* ¶ 6. The monthly payments were due on the 1st of each month until July 1, 2020, or the complete principal amount was due if Clearspan accelerated the amount owed under the Contract and Lease. *Id.* ¶ 7. Clearspan performed its obligations by "delivering and/or erecting" the Structure. *Id.* ¶ 8. Clearspan "exercised its right to accelerate amounts due and owing under the [Contract, Lease, and Guaranty] and demand payment of any and all amounts due under the [Contract, Lease, and Guaranty]." *Id.* ¶¶ 12-14, 30-32. Wildwood and the Guarantors have failed, refused, and/or neglected to pay amounts owed to Clearspan under the Contract, Lease, and Guaranty. *Id.* ¶¶ 9, 29.

The Contract includes a provision stating that "[t]his Agreement shall be governed by the law of the state in which the Project is located," which was, according to attachments to the Contract, the State of Massachusetts. ECF No. 44 at 22, 25. The Lease, however, provides that "[t]his agreement and the rights and obligations of the parties … shall in all respects be governed by and construed in accordance with[] the internal laws of the State of Connecticut (without regard to the conflict of laws principles of such state), including all matters of construction, validity and performance, regardless of the location of the equipment." ECF No. 44 at 57.

Before filing this federal lawsuit, Clearspan initiated mediation through the American Arbitration Association as required by the Contract. *Id.* ¶¶ 16, 17. Wildwood objected and "(a) stated that it would not participate in the mediation; (b) stated that a mediation would be fruitless, and/or (c) waived any such requirement . . . ." *Id.* Clearspan seeks payment of amounts due and owing under the Contract, Lease, and Guaranty. *Id.* ¶¶ 14, 19-20, 32.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). The court may consider any documents attached to, incorporated in by reference, or otherwise heavily relied upon in the complaint when deciding the motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)).

3

**III.   DISCUSSION**

Wildwood and its Guarantors seek to dismiss parts of Count I (breach of contract as to Wildwood) and the entirety of Count II (breach of guaranty as to the Guarantors). Specifically, defendants argue that (1) Count I should be dismissed to the extent it seeks to recover monthly installment payments that became due six years or more before the commencement of this action, i.e., before January 24, 2014, because such claims are time-barred by the applicable statute of limitations in Massachusetts, which, defendants argue, provides the governing law here; (2) Count I should be dismissed to the extent it seeks recovery under the Lease because the Lease was superseded by operation of the integration clause in the later-executed Contract; and (3) Count II should be dismissed in its entirety because the Guarantors' obligation cannot exceed that of Wildwood under the Lease, and recovery under the Lease is precluded because of the Contract's integration clause. ECF Nos. 56, 56-1 at 1-2. In response, Clearspan argues that defendants' motion to dismiss should be denied because (1) Rule 12(b)(6) does not allow a court to dismiss part of a single claim; (2) Connecticut law, rather than Massachusetts law, governs the accrual date for a statute of limitations defense; and (3) there is a question of fact as to the parties' intent regarding whether the Contract's integration clause supersedes the Lease and, thus, which state's law governs the Contract, Lease, and Guaranty, a question that should not be resolved on a Rule 12(b)(6) motion. ECF No. 57 at 2, 4-5, 7. Because I find that questions of fact exist as to whether the Contract was intended to supersede the Lease by operation of the integration clause and as to when Clearspan's breach of contract claim (or claims) accrued, the defendants' motion to dismiss is denied.

### A. Questions of Fact Preclude a Finding as to Whether the Contract Supersedes the Lease Due to the Integration Clause.

The defendants assert that Clearspan's claim based on the Lease must be dismissed "on the grounds that the Lease was superseded by the [Contract] Agreement and its broad integration clause," ECF No. 56 at 1, and therefore any recovery under the Lease is precluded, ECF No. 56-1 at 8. Clearspan argues, in part, that there is a question of fact regarding the parties' intent concerning the Contract's integration clause and its application to the Lease that cannot be decided on a 12(b)(6) motion to dismiss. ECF No. 57 at 6. That is so, according to Clearspan, because the Contract and Lease address substantially different aspects of the same project and because the Contract is silent as to the Lease. *Id.* at 7. I agree with Clearspan.

The integration clause in the Contract provides as follows:

> This Agreement is solely for the benefit of the parties, represents the entire and integrated agreement between the parties, and supersedes all prior negotiations, representations, or agreements, either written or oral. The Owner and [] Clearspan agree to look solely to each other with respect to the performance of the [Contract]. The [Contract] and each and every provision is for the exclusive benefit of the Owner and Clearspan and not for the benefit of any third party nor any third party beneficiary, except to the extent expressly provided in the [Contract].

ECF No. 44 at 16 ¶ 10.1.1. While I agree that the plain terms of the integration clause are unambiguous, the presence of the clause, in light of the existence of the two agreements, leaves unanswered questions about the parties' intentions. Specifically, because they embody fundamentally different business arrangements, it is not clear from the face of the Contract that the parties intended it to supersede the Lease or that the Contract itself is the parties' complete agreement. The Contract is framed as primarily one for the provision of design and construction services by Clearspan. It describes a "Project" involving "the erection at the Worksite of the Clearspan products listed on the attached Exhibit B," which lists a "Truss Arch Building," among other things. ECF No. 44 at 10, 34. Clearspan is to "provide all construction[,]

5

supervision, inspection, construction equipment, labor, materials[,] and tools necessary to complete the Work." ECF No. 44 at 11. There are provisions regarding changes and delays in the work, claims for additional cost and time, and other features typical of a construction services contract. *Id.* at 12-13. By contrast, the Lease, entitled "Equipment Lease Agreement with Purchase Option", involves, as the name suggests, a lease of equipment with the option to buy that equipment. *Id.* at 50. As Lessor, Clearspan is required to deliver the equipment components, while, as Lessee, Wildwood is responsible for paying rent, securing permits for assembly, and maintaining and using the equipment in its business. Under the Lease, the equipment remains Clearspan's property, unless, within a specified time frame, Wildwood elects to purchase the equipment. To be sure, the leased equipment consists primarily of the "Truss Building", ECF No. 44 at 60, which appears to be same item referred to in Exhibit B of Contract, but, as the description above suggests, the rights and responsibilities set forth in the two agreements are quite different.

Further, nowhere does the Contract expressly mention the Lease, and the only use of the word "lease" in the Contract appears in section 6.2, which provides as follows:

> Payment for Construction Services. Payment of Thirty-Four Thousand Five Hundred Seventy-Three Dollars ($34,573.00) was received June 10, 2010. Upon the Substantial Completion of the Work, the Owner shall pay Clearspan the unpaid balance of the Contract Price, which sum shall be due and payable by the Owner in *equal lease payments* starting thirty (30) days after Clearspan's issuance of an invoice for the same.

ECF No. 44 at 13 (emphasis added). The Contract does not define anything further about the lease payments, including the amount, number, or frequency of such payments. The Lease, however, provides such information, describing the payments as "rent" payments and listing a total rent ($395,318.56, ECF No. 44 at 59) that differs from that listed in the Contract *and* from the prices listed in the invoice that accompanies the Lease and the estimate that accompanies the

6

Contract.  *Compare* ECF No. 44 at 34 (estimate dated June 10, 2010, associated with the Contract that lists a total price of $344,125.02), *with id.* at 60 (invoice dated May 5, 2010, associated with the Lease that lists a total price of $345,370.02 (after a discount) and a down payment of $34,573).

These indicia of the parties' intent do not paint a clear picture.  Although it is plausible that a deal between Clearspan and Wildwood began as a lease of equipment and evolved into a construction services arrangement together with the provision of equipment, such an evolution is described nowhere in the documents.  Especially when reasonable inferences from the complaint, which suggests that both the Lease and the Contract are operative, are drawn against Wildwood, there is no clear indication that the parties meant entirely to replace the lease-with-option-to-purchase equipment arrangement reflected in the Lease with the construction services arrangement reflected in the Contract.  The integration clause itself is a boilerplate provision that makes no reference to the Lease or to any other previous arrangement between the parties.

Under both Connecticut and Massachusetts law, as the parties agree, an unambiguous integration clause does not preclude enforcement of an earlier agreement that addresses a distinct subject matter.  *Perricone v. Perricone*, 972 A.2d 666, 673-74 (Conn. 2009); *Chambers v. Gold Medal Bakery, Inc.*, 982 N.E.2d 1190, 1196-97 (Mass. App. Ct. 2013); *see also* ECF No. 56-1 at 9 n.10; ECF No. 57 at 6-8.  "[W]hether the [prior] agreement addressed the same subject matter as the [] agreement [that contains the integration clause] . . . is a question of fact involving the intent of the parties . . . ."  *Perricone*, 972 A.2d at 673; *accord Holmes Realty Tr. v. Granite City Storage Co.*, 517 N.E.2d 502, 504 (Mass. App. Ct. 1988) ("Whether the lease [containing an integration clause] and the exchange agreement should be read together as one integrated agreement is a question of fact which turns upon the intention of the parties.").  Although the

7

Contract and Lease appear to relate to the same project, the different rights and obligations they describe raise a question of fact about whether the former was intended to replace the latter.

Thus, because I must construe the pleadings in the light most favorable to the non-moving party (here, Clearspan), and because questions of fact cannot be resolved on a Rule 12(b)(6) motion to dismiss, the defendants' motion to dismiss Count 1 to the extent it relies on the notion that the Contract supersedes the Lease must be denied.  Further, because defendants' motion to dismiss Count 2 is premised solely on the notion that the Guarantors' liability for Wildwood's alleged breach of its obligations under the Lease was extinguished by operation of the Contract's integration clause, I must also deny defendants' motion to dismiss Count 2.  For the same reasons, I cannot determine whether the parties intended that Massachusetts law, as indicated in the Contract, or Connecticut law, as indicated in the Lease and Guaranty, governs their relationship.

      **B.**      **Questions of Fact Preclude a Finding as to the Accrual Date of Clearspan's Breach of Contract Claim Based on Unpaid Installment Payments.**

The defendants also seek to dismiss Count 1 to the extent that Clearspan's breach of contract claim relies on missed installment payments that came due prior to January 24, 2014 – outside the six-year statute of limitations for breach of contract claims provided for in both Massachusetts and Connecticut.  ECF No. 56-1 at 1; Conn. Gen. Stat. Ann. § 52-576(a) ("No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues."); Mass. Gen. Laws ch. 260 § 2 ("Actions of contract . . . shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues.").  The parties disagree as to whether Connecticut or Massachusetts law governs the accrual date of missed installment payments and whether Clearspan's alleged breach of contract constitutes a single claim or multiple claims (and thus

8

whether a Rule 12(b)(6) motion is an appropriate procedural method to dispose of claims based on missed installment payments that occurred outside the statutory window). Because, as noted, I cannot resolve on this Rule 12(b)(6) motion whether Connecticut or Massachusetts provides the governing law and because, as discussed below, I find that a question of fact remains as to when Clearspan's breach of contract claims (or claims) accrued, the defendants' motion to dismiss Count 1 to the extent it seeks to recover monthly installment payments that became due outside the statutory window must be denied.

As a general matter, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss [under] . . . Rule 12(b)(6) . . . for failure to state a claim upon which relief can be granted." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). But here, it is not clear from the face of the complaint whether all or any of Clearspan's breach of contract claim is time-barred. That is so because Clearspan's allegations are not specific as to which installment payments were missed (or when they were missed), and Clearspan does not identify the date on which it "accelerated" the payments due under the Contract, Lease, or Guaranty. Instead, Clearspan alleges generally that Wildwood was obligated to pay Clearspan "a total principal amount of not less than $344,125.02 in monthly installments until all sums are paid . . .", ECF No. 44 ¶ 6, those payments were due each month until July 1, 2020, *id.* ¶ 7, and Wildwood and the Guarantors "fail[ed], refus[ed] and/or neglect[ed] to make one or more . . ." of the payments, *id.* ¶¶ 9, 29. Clearspan also alleges that it "exercised its right to accelerate amounts due . . .", *id.* ¶ 12, *and* that Clearspan "hereby exercises its right to accelerate amounts due . . .", *id.* ¶ 13; *see also id.* ¶¶ 30, 31 (same allegations as to the Guarantors). The plain language of these allegations indicates that monthly payments were due but does not specify

9

when they started or when they were missed; similarly, the allegations indicate that Clearspan "accelerated" the amount due at some unspecified point in the past (and again on filing this lawsuit), nor does Clearspan indicate in the complaint which contractual provision supported its alleged right to accelerate.[1]

In both Connecticut and Massachusetts, a cause of action for a missed contractual installment payment accrues on the day following such a missed payment unless a contractual right to accelerate payment is invoked (either at the option of a party or automatically). *See Cropanese v. Lafever*, 2018 Mass. App. Div. 147 *2 ("[W]hen an instrument is payable in installments, the cause of action on each installment accrues on the date following the date the installment is due." (citing *Clark v. Trumble*, 692 N.E.2d 74, 79-80 (Mass. App. Ct. 1998)); *Cadle Co. v. Prodoti*, 716 A.2d 965, 966-67 (Conn. Supp. 1998) (finding that a cause of action for missed installment payments accrues separately for each such payment missed, but that "the statute of limitations clock begins to run irreversibly when an optional acceleration clause is exercised by a demand of full payment before all installments become due."); *see also Fleet Nat. Bank v. Lahm*, 861 A.2d 545, 548 (Conn. App. 2004) (approving of the *Cadle* Court's reasoning).[2] But the laws of Massachusetts and Connecticut appear to diverge in this context

---

[1] In its response to the motion to dismiss, Clearspan identifies section 10(b) of the Lease as containing a "de facto acceleration clause." ECF No. 57 at 11. But even if section 10(b) does constitute an acceleration clause – an issue the defendants dispute and one that I do not decide here – I cannot determine whether Clearspan has any contractual right to accelerate because I cannot determine whether the Contract's integration clause supersedes the Lease at this stage, as discussed above.

[2] It is not clear whether *Lahm* and *Cadle* are entirely consistent. In *Cadle*, a common law case, the court was focused only on the question whether, after a default on a single installment payment, the statute of limitations began to run on other installments due in the future. There, it appears from the recitation of the facts that the creditor had recovered the amounts due on the missed installment payment by repossessing and selling security for the debt (a vehicle) before bringing suit on the remainder of the debt, such that the suit pertained only to the installments that fell due after the initial, missed installment. By contrast, *Lahm*, which was decided under a U.C.C. provision, appears to hold that even though the missed installment payment was outside the statute of limitations, the creditor could nonetheless sue on the entire debt, because the promissory note at issue provided a specific due date (i.e., maturity date) for the debt, and it was that date that triggered the running of the statute of limitations.

10

where, as may be the case here, an optional right to accelerate the entire amount due is invoked within six years of a maturity date but after the end of a period of installment payments that extends beyond the six-year statute of limitations. *Compare Fleet Nat. Bank*, 861 A.2d at 547 (in U.C.C. case, holding that, in the context of a promissory note that required installment payments and contained a final due date, the cause of action accrued after the expiration of the final due date (unless the plaintiff exercised the optional right to accelerate payments prior to that date) and therefore plaintiff's claims were not barred by the six-year statute of limitations, even though some installment payments came due outside of the statutory window), *with Clark*, 692 N.E.2d at 79-80 (rejecting the argument that a cause of action based on a failure to pay installment payments due under a promissory note accrues on the date the note matures, and holding instead that claims for missed installment payments that occurred outside the statutory window were time-barred because, where no right to accelerate was invoked, the statute of limitations clock began ticking on the day following the due date of each installment payment separately). Thus, because Clearspan's allegations did not identify when individual installment payments were missed or when it accelerated amounts due, and because I cannot determine whether Clearspan has any such right to accelerate or which state's law governs the parties' contractual relationship at this stage, defendants' motion to dismiss Count 1 to the extent certain installment payments are time-barred must be denied.[3]

---

[3] Of course, this ruling does not preclude the defendants from raising the statute of limitations as a defense in their answer or, after sufficient discovery, from later moving for summary judgment, in whole or in part, based on a statute-of-limitations defense.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 56, is hereby DENIED.

IT IS SO ORDERED.

/s/<br>Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
          February 8, 2021